UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEWYORK
-----------------------------------------------------x
CARLOS VIGUERA,

                     Plaintiff,               **COMPLAINT**

                                         **JURY DEMAND**

      -against-

                                 08 Civ. 3807

THE NEW YORK CITY HEALTH AND
HOSPITAL CORPORATION and ANA
BLANCO,

                    Defendants.
----------------------------------------------------------x

## I.  NATURE OF ACTION

1.  This action involves  hostile environment sexual harassment.  Plaintiff, Carlos Viguera, is a black  male of  Dominican Republic national origin. He maintains in this action that he was subjected to a persistent pattern of  sexual overtures and  harassment from his supervisor   which had the effect of  creating  a hostile work  environment.  He brings the action under Title VII of the Civil Rights Act of 1964, as amended , 42 U.S.C. § 2000e *et. seq.* ("Title VII"). He also asserts  pendent State claims for discrimination on account of gender and retaliation in violation of New York State Executive Law § 296 *et. seq.*  and New  York City Administrative Code § 8-107 *et. seq.*

## II.   JURISDICTION

2.  Jurisdiction is conferred upon this court by 28 U.S.C. § 1331 and 28 U.S.C. § 1343 (a).  Plaintiff further invokes the pendent jurisdiction of the court to adjudicate claims arising under State Law.

### III.   THE PARTIES

3.  Plaintiff is a black male of Dominican Republic national heritage.

4.  Defendant New York City Health and Hospitals Corporation ("HHC") is a public benefit corporation created by the New York State Legislature, and it is engaged in operating health care facilities providing medical services to the public.

5. Ana Blanco is a female and is employed by HHC as a Coordinating Manager.

### IV.   STATEMENT OF CLAIMS

6. Carlos Viguera commenced employment with HHC in or about 1991 as a Senior Management consultant at the Central Office. Presently he holds the permanent civil service title of Senior Program Planning Analyst.

7. In 2001, Mr. Viguera was assigned to the Grant Reporting Department, Finance Division working as a Grant Analyst.

8.  At the time he was employed Mr. Viguera was highly qualified for the position to which he was hired. He has a Masters Degree from New York University in Public Administration and he has spent many years working in the private sector in the field of finance.

9.  In 2004, Mr. Viguera filed a charge of sex discrimination against his female supervisors in the Grant Reporting Department.

10. Because of the discriminatory treatment Mr. Viguera's was suffering in the Grant Reporting Department, the Executive Director of HHC, Carlos Perez, removed him from the department and placed him in the Business Development Department where he was assigned to work in position of Outreach Liaison to the Latino Community.

11. In 2006, Mr. Viguera was removed without cause from his position as Outreach Liaison to the Latino Community and assigned to work outside of his civil service title as a so-called Patient Navigator in the Cultural Competency Department.

12. While working as a Patient Navigator Mr. Viguera reported to Senior Associate Director Irene Quinones.

13. In September 2006, Ms. Quinones downgraded Viguera's status in her department and directed that he work under the supervision of Ana Blanco, whom Ms. Quinones had recently promoted to the position of Coordinating Manager. Ms. Blanco, a former subordinate of Mr. Viguera, highest educational credential is a high school diploma.

14. While working under Ms. Blanco's supervision Mr. Viguera became subject to a persistent pattern of unwelcome sexual overtures.

15. Ms. Blanco continually attempted to engage Mr. Viguera in conversation about sexual matters.

16. Ms. Blanco would often inquire about the size of Mr. Viguera's penis.

17. Ms. Blanco invited Mr. Viguera to her home for dinner.

18. Ms. Blanco questioned Mr. Viguera about what he considered to be the physical attributes of a woman that would indicate she has large genitalia.

19. Ms. Blanco directed numerous text messages to Mr. Viguera which made references to oral sex, the frequency of sexual activity and penis size, including but not limited to the following.

20. On August 3, 2007, Ms. Blanco sent Mr. Viguera a text message referring to oral sex.

21.   On  August 4,  2007, Ms. Blanco sent Mr. Viguera  a number of text messages making reference  to oral sex, anal sex, and penis size.

22.  On  August 7,  2007  Ms. Blanco sent Mr. Viguera a text message referring to the frequency of  having sex.

23.  On August 10, 2007, Ms. Blanco sent text message in Spanish  describing the male penis.

24. On  August 15, 2007,  Ms. Blanco e-mailed to   Mr. Viguera a provocative  photo of herself posing next to her bed.

25.  On other occasions, Ms. Blanco bombarded  Mr. Viguera with e-mails containing photos with  explicit  sexual content, some referring to male prostitution.

26.  In or about September 2007,  Ms. Blanco approached Mr. Viguera from behind  in his office and placed him in  a neck lock with her arm.

27.  In August 2007,  Ms. Blanco sent Mr. Viguera a series of  graphic photos showing female and male genitalia displaying  symptoms of  various venereal diseases.

28.   All of  Ms. Blanco's conduct toward Ms. Viguera  as described above   was unwelcome, uninvited and had the effect of  creating  a hostile work environment.

29.  Finally realizing that  Mr. Viguera  was   not receptive to her sexual  overtures Ms. Blanco became resentful and  sought opportunities to humiliate and belittle him.

30.  In or about August 2007   Ms. Blanco made a statement  in front of a  co-worker, alluding to the purported  size  of  Mr. Veguera 's penis.

31.  In  November 2007,  Ms. Blanco stopped speaking to Mr.  Viguera  and shortly thereafter arranged for his involuntary  transfer from her department  to the  Primary Care

Clinic where he was given the assignment of entering doctors' schedules into a computer.

32. On January 31, 2008 Mr. Viguera filed a charge with the Equal Employment Opportunity Commission ("E.E.O.C.") complaining of Ms. Blanco's conduct.

33. On or about March 20, 2007 the E.E.O.C. issued Notice-of-Right- to Sue letter.

34. Prior to filing the instant complaint plaintiff served a copy thereof on the Corporation Counsel and the New York City Commission of Human Rights pursuant to New York City Administrative Code § 8-502(c).

## V. FIRST CLAIM FOR RELIEF

35. Plaintiff repeats the matters set forth in paragraphs 1 through 39.

36. Defendant HHC's conduct as described above constitutes discrimination based upon gender in violation of Title VII.

37. As a consequence of defendant HHC's conduct plaintiff suffered extreme physical, mental and emotional pain and was damaged in the amount of $300, 000.00.

## VI. SECOND CLAIM FOR RELIEF

38. Plaintiff repeats the matters set forth in paragraphs 1 through 39.

39. Defendants' conduct as described above constitutes discrimination based upon gender in violation of New York Executive Law § 296 *et. seq*.

40. As a consequence of defendants' discriminatory conduct in violation of the Executive Law plaintiff suffered extreme physical, mental, and emotional pain and was damaged in the amount of $3,000,000.00.

## VIII. THIRD CLAIM FOR RELIEF

41. Plaintiff repeats the matters set forth in paragraphs 1 through .

42.   Defendants' conduct as described above constitutes discrimination based upon gender in violation on the Administrative Code of the City of New York § 8-107 *et. seq.*

43.   As a consequence of defendants' discriminatory conduct plaintiff suffered extreme physical and mental pain and was damaged in the amount of $3,000,000.00.

WHEREFORE, plaintiff demands a) judgment against defendant HHC on his First Claim for Relief in the amount  $300,0000, together with reasonable attorney fees, b) c) judgment against each defendant on  Plaintiff's Second  Claim for Relief in the amount $3,000,000.00, together with punitive damages against Ana Blanco in the amount of $10,000,000.00, d) judgment against each defendant on plaintiff's Third   Claim for Relief in the amount in of  $3,000,000.00, together  with punitive damages against Ana Blanco in the amount of  $10,000,000.00, together with  such other relief the court deems just and proper.

## XII.  DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands that all  issues in this matter be tried before a jury.

Dated:  Brooklyn, New York
           March 26, 2008

 

 

_____
ROOSEVELT SEYMOUR
*Attorney for Plaintiff*
175 Remsen Street, Suite 602
Brooklyn, New York 11201
(718) 802-0055